I concur in the result reached by the main opinion's affirmance of the trial court's award of child support pursuant to Rule 32, Ala. R. Jud. Admin., but, like Judge Crawley, I dissent from the affirmance of the award of postminority educational support.
As to the former issue, Rule 32(B)(2)(a), Ala. R. Jud. Admin., defines "gross income" as including "preexisting periodic alimony." Presumably, the rule does not expressly include alimony received from the spouse in the current marriage, nor does it provide the current spouse a concomitant reduction in gross income attributable to that alimony payment, because doing so would prioritize the other spouse's alimony obligation over his obligation to pay child support. Consistent with the main opinion, I believe the child-support obligation must be calculated first and that any alimony awarded should take into consideration that primary obligation of child support.
As to the latter issue, the trial court expressly found in its judgment that the list of expenses submitted by each party exceeds their available income. The trial court reasoned that, nonetheless, it could require the father to pay Bayliss-type postminority educational support because the fact that expenses exceeded available income was the result of "poor financial management during the marriage" and because the parties could file a Chapter 13 bankruptcy petition. See Ex parte Bayliss,550 So.2d 986 (Ala. 1989).
The fact that both the father and the mother incurred more debt than was wise or otherwise mismanaged their financial affairs during their marriage, is now an historical fact. It cannot be undone. Nor is there evidence indicating that the father purposefully engaged in such financial mismanagement in order to diminish his capacity to pay for his child's college expenses.
In the absence of bad faith on the part of the father, the fact that he is unable to fulfill all of his financial obligations, including paying his living expenses, servicing his debts, paying his taxes, paying his child support, and paying the Bayliss
support ordered by the trial court, without bankruptcyprotection, would, by definition, appear to indicate an undue financial burden. Nothing in Ex parte Bayliss or its progeny requires a parent to avoid payment of, or defer paying, lawful debts and finance charges under the circumstances presented here. Nor should it. I cannot vote to affirm a judgment that suggests to a party that he undertake such a course.[2] *Page 140 
I therefore would reverse that portion of the trial court's judgment relating to the award of Bayliss support, and I would remand the cause for the trial court to consider what award ofBayliss support, if any, would be appropriate without necessitating a filing of bankruptcy by the father.
[2] If the father had already filed a Chapter 13 bankruptcy petition before the commencement of the present action, nothing would prevent the trial court from considering the financial ability of the father, given that filing, to help fund his son's postminority education.